No. 39,397

In re Estate of Elsie R. Goddard, Deceased. (DONALD R. GODDARD, Administrator c. t. a. of Estate of Elsie R. Goddard, Deceased, and AMERICAN BONDING COMPANY OF BALTIMORE, *Appellees*, v. BYRON G. LARSON, Guardian *Ad Litem* of Timothy Goddard, Shannon Goddard and Patrick Goddard, *Appellant*.)

(271 P. 2d 759)

Opinion filed June 12, 1954.

*Byron G. Larson,* of Dodge City, argued the cause and was on the briefs *pro se* as guardian *ad litem.*

*R. R. Mitchell,* of Dodge City, argued the cause, and *W. C. Gould,* of Dodge City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This appeal arises out of a judgment of final settlement of a decedent's estate in the probate court.

The bondsman, a corporate surety, of the administrator, appealed in the dual capacity of principal and surety to the district court from a judgment of the probate court against the administrator. The guardian of three minors, beneficiaries in the will of their mother, Elsie R. Goddard, has appealed to this court from the judgment of the district court. We shall refer to the guardian as the appellant. Although the bonding company in its dual capacity is referred to in the briefs as appellees we shall designate it as appellee.

The questions on appeal pertain to liabilities of the administrator and the consequential liability of his bondsman with respect to certain acts of the administrator and credits allowed to the latter for the support, maintenance and education of one of the minors, pursuant to the terms of his mother's will. The administrator was the father of such child and the husband of Elsie R. Goddard, deceased. A property settlement had been entered into by and between the deceased and her husband approximately one month before her death. That settlement included real estate situated in the state of California.

The parties stipulated as follows:

"It is stipulated between all parties that the house in California was set over to Elsie Goddard in a property settlement with Donald R. Goddard who were then husband and wife, which was entered into previous to her death, that this California real estate was never listed in the inventory and appraisement or final accounting of Donald R. Goddard, but was sold shortly after Elsie Goddard's death by Donald R. Goddard to a purchaser in California; that the record title in California was held in the names of Elsie R. Goddard and Donald R. God-

dard in joint tenancy with right of survivorship; that Donald R. Goddard, *individually and in his individual capacity*, subsequent to Elsie's death, obtained a court decree from a California court, which decree terminated this joint tenancy and found that Donald R. Goddard was the owner of this real estate; then that Donald R. Goddard *individually* gave a deed to this property to a purchaser in California and received net proceeds in the amount of $8,654.03." (Our italics.)

The parties also stipulated concerning the adjusted gross personal income of the administrator, other than in his official capacity, covering the years 1947 to 1952, inclusive.

The district court made findings of fact and conclusions of law which are appended hereto. They quite clearly reflect the facts out of which the controversies arose and the judgment rendered thereon.

The record presented discloses no direct attack by appellant on any finding of fact or conclusion of law or any indirect attack by motion requesting contrary findings of fact or conclusions of law. The motion for new trial makes no reference to the findings of fact. It raises only the question whether the judgment is supported by or is contrary to the evidence.

Appellee states no objection to any finding of fact was made in the district court and contends objections thereto made first on appellate review are not entitled to consideration. That is the rule. In this case the findings of fact and conclusions of law were made a part of the judgment. The appeal is from the judgment and the order overruling the motion for a new trial. If we could assume the instant motion for new trial challenged any of the specific findings of fact now complained of we would not be justified in disturbing them on the record presented which appellee insists is incomplete. Moreover, we cannot disturb them on the record presented if it be regarded as sufficiently complete.

Appellant filed no motion for judgment on the findings made by the district court. He does not now contend the findings made do not support the conclusions of law or that they require judgment in his favor. In any event we have no hesistancy in concluding they support the conclusions of law and the judgment rendered. Under the circumstances there is only one other subject which requires our further attention.

It is whether there is substantial merit in appellant's contention appellee's appeal to the district court was utterly void. As previously stated the instant appellee was the appellant in the district court. Appellee in that court filed a motion to dismiss the appeal on the

grounds "no bond has been filed" and "that said bonding company had no legal right to appeal. . . ." The motion was overruled. Appellant in this court now argues only the first ground of the above motion.

The argument made is appellee, appellant in the district court, signed its own appeal bond as surety, which renders it void and the district court, therefore, did not acquire jurisdiction. The bond reads:

"Know All Men By These Presents:

"That we, American Bonding Company of Baltimore as principal and also as surety, are jointly and severally held and firmly bound unto the State of Kansas, in the 'amount of Five Hundred Dollars ($500.00), lawful money of the United States to the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns firmly by these presents.

[Here followed the ordinary provision which specified the condition of the obligation to be a prosecution of the appeal without delay and liability for the judgment rendered against the administrator and for costs that might be adjudged.]

"In Witness Whereof, We have hereunto subscribed our names at Dodge City, Kansas, this 8 day of June, 1953.

"AMERICAN BONDING COMPANY<br>
OF BALTIMORE<br>
"BY /s/ Seymour Drehmer<br>
"Attorney in Fact<br>
"Principal and Surety"

The pertinent part of G. S. 1949, 59-2405, reads:

"The appellant, other than the state or municipality or a fiduciary appealing on behalf of the estate, shall file in the probate court a bond in such sum *and with such sureties as may be fixed and approved by the probate court*, conditioned that he will without unnecessary delay prosecute the appeal and pay all sums, damages, and costs that may be adjudged against him. (3) Whenever a party in good faith gives due notice of appeal and omits through mistake to do any other act necessary to perfect the appeal, the district court may permit an amendment on such terms as may be just." (Our italics.)

Appellee informs us the sufficiency of the bond was fully discussed by the parties in the probate court, the court approved the bond and made an order to that effect. Neither the order nor the proceedings in the probate court on that subject is reflected in appellant's abstract. Appellee also advises us the matter of the sufficiency of the bond was again fully discussed in the district court in connection with the instant appellant's motion to dismiss the appeal in that court; that appellee offered to amend its bond

by the addition of whatever surety or sureties might be desired if the district court deemed that necessary but that the court did not believe it was necessary under the circumstances of this case. Those proceedings are not disclosed by appellant's abstract but appellant does not deny such proceedings were had in both courts.

Appellant concedes this court has held an appeal is not a complete nullity and may be amended where the appeal bond statute requires "good and sufficient security" even though the principal originally executed the bond alone, citing *McClelland Bros. v. Allison*, 34 Kan. 155, 8 Pac. 239; *Ottawa v. Johnson*, 73 Kan. 165, 84 Pac. 749; and *Buxton v. Ford County Comm'rs*, 170 Kan. 148, 223 P. 2d 734. Other cases to the same effect might be cited. He, however, argues that is not the rule where the statute requires a bond shall be signed by a "surety or sureties." The contention is too broad. The appeal bond in the McClelland Bros. case, *supra*, required "at least one good and sufficient *surety*" (our emphasis) and was held to be amendable although only the principal had signed it. That decision was recognized in the Ottawa and Buxton cases, *supra*, although the bond required in those cases involved statutes requiring a bond "with good and sufficient security" in one case and "with sufficient security" in the other. In the Ottawa case the court said:

"It was held in *McClelland Bros. v. Allison*, 34 Kan. 155, 8 Pac. 239, that an appeal bond approved by a justice of the peace in a civil case, signed only by the parties against whom the judgment had been rendered, was not entirely void, and might be amended, although the statute (Gen. Stat. 1901, § 5354) required that it should be signed by '*at least one good and sufficient surety*.' [p. 166.]

. . . . . . . . . . . . . . . .

"It is said, and there appears to be no authority to the contrary, that 'although the statute provides that recognizances shall be executed *by two sureties*, a recognizance is not invalid because executed by one only.' (3 A. & E. Encycl. of L. 683. See, also, 2 Cyc. 922.) Upon the same principle it seems clear that a recognizance upon appeal, entered into by a defendant without any surety whatever, although it fails to meet fully the requirements of the law, is not utterly void, but if approved and acted upon is effective to bind the signer and confer jurisdiction upon the appellate court." (Our italics.) (p. 167.)

The foregoing statement was again quoted with approval in the recent Buxton case, *supra*, in which many of our former cases were carefully reviewed.

Appellant argues the general rule as stated in 11 C. J. S., Bonds, 401, § 9b, and in 9 C. J. 10, § 7, to which there is no exception, is

that unless sureties are required by the statute authorizing its execution the fact that a bond is without a surety is immaterial, so long as the instrument comes under the legal definition of a bond.

Appellant directs attention to the fact the above rule was recognized in the Buxton case. It was recognized but we do not regard it as completely nullifying the appeal under our statute and facts of this particular case. Our decisions frequently have emphasized, as indicated in the foregoing and other cases, that appeals are favored and appeal statutes should be liberally construed in furtherance of justice wherever that reasonably may be done.

The instant corporate bondsman was the surety on the administrator's bond which had been given and approved by the probate court when Goddard qualified as administrator c. t. a. Had the bonding company not appealed from the judgment rendered against the administrator in the probate court that judgment would have become a finality against the administrator and without doubt also would have been enforceable against his surety, appellee. Notwithstanding the fact the bonding company perfected the appeal to the district court that court had before it the question whether the judgment against the administrator should be affirmed. It is true the bonding company was the principal in the district court in the sense that it had perfected the appeal. That, however, did not alter the fact it also remained the surety on the administrator's bond in the probate court. It, therefore, executed the bond not only as principal but also as surety. As previously indicated both the probate court and the district court had approved the appeal bond. Appellee nevertheless offered to furnish additional surety, or sureties, if that were deemed necessary.

In passing we may state there is not the slightest intimation the bond did not provide full protection for any judgment which properly might have been rendered against the administrator. In view of the provisions of the bond and all the other facts of this particular case we have no hesitancy in saying the district court acquired jurisdiction of the appeal and that it would constitute too technical an interpretation of the instant appeal bond statute to nullify the judgment of the district court on the ground that court was without jurisdiction to render it.

The judgment of the district court is affirmed.

## "FINDINGS OF FACT

"The Court finds from the evidence:

"1. That a residence property located at 5417 Mullen Avenue in Los Angeles, California, was set over to Elsie R. Goddard in a property settlement agreement with Donald R. Goddard entered into previous to her death.

"2. That this real property was never listed in the inventory and appraisement or final accounting by Donald R. Goddard, administrator c. t. a. of this estate.

"3. That on the date of Elsie R. Goddard's death in 1946, the record title to the above real property was held in the names of Elsie R. Goddard and Donald R. Goddard as joint tenants with right of survivorship.

"4. That subsequent to Elsie's death, Donald R. Goddard as surviving joint tenant, obtained a Court decree from a California court terminating this joint tenancy and finding that Donald R. Goddard was the record owner of this real estate. That Donald R. Goddard then gave a deed to this property to a purchaser in California and received net proceeds from said property in the amount of $8654.03. [See, also, stipulation of parties.]

"5. That Donald R. Goddard *as administrator c. t. a.* did not rightfully receive the proceeds from the sale of the California real property. [Our italics.]

"6. The court further finds that Donald R. Goddard conducted all proceedings regarding the above California real property *in his individual capacity and not in his capacity as administrator c. t. a.* of the estate of Elsie R. Goddard, deceased. [Our italics.]

"7. The court further finds that neither the California real property nor the proceeds thereof are assets of the estate of Elsie R. Goddard, deceased, in Ford County, Kansas, and that therefore the said probate court had no jurisdiction of the California real property.

"8. The court further finds that the income of Donald R. Goddard, administrator c. t. a. and father of Timothy Goddard, minor heir of decedent, averaged approximately $1600.00 per year for the years 1947 through 1952.

"9. The court further finds that Timothy Goddard's physical condition was such that he required nursing and medical care over and above that of a normal child.

"10. The court further finds that Donald R. Goddard spent ap-

proximately $7500.00 over the six-year period of 1947 through 1952 on the support, maintenance, education and medical expense for said Timothy Goddard, or an average of approximately $1250.00 per year.

"11. The court further finds that until the year 1952, Donald R. Goddard was not maintaining a home in which Timothy Goddard could live and that during this period of time, Timothy Goddard was in boarding schools and military schools for part of the years and at other times stayed with his grandmother and not with his father. That in July of 1952, Donald R. Goddard had established a home where he was able to have his minor son come and live and that after July, 1952, said Donald R. Goddard has made no charge for the support, maintenance, education or medical expenses of Timothy Goddard.

"12. The court further finds that although Donald R. Goddard as administrator c. t. a. took credit in his final accounting for almost $7500.00 support, maintenance, education and medical expenses for Timothy Goddard, only $3404.14 is properly chargeable against the estate of Elsie R. Goddard, deceased, under her last will and testament and that the amount of $3404.14 was a reasonable charge against said estate by reason of the father's income and the separate estate of Timothy Goddard.

"13. The court further finds that Donald R. Goddard as administrator c. t. a., but without authority of the Ford County Probate Court, converted the 'F' bonds listed in the inventory and appraisement into cash and invested the proceeds, or the principal part thereof, in a retail store in California and that said funds have been lost and dissipated and no income received therefrom; that although Donald R. Goddard acted in good faith, this was an improper investment for which the administrator c. t. a. should be surcharged.

"14. That in order to pay the allowable and allowed expenses which were proper charges against the estate of Elsie R. Goddard, the administrator would have had to cash one bond in November of 1946 and another bond in June of 1950.

"15. That the administrator c. t. a. should be charged with interest upon the bonds according to their original terms for the bonds that were wrongfully cashed, and that the administrator should be charged in his accounts with the amount received for the bond cashed in November of 1946, being the amount of $3785.00 and with the value of the second bond in June of 1950, being the amount of

$3930.00, and further that said administrator should be charged with interest according to their original terms upon the remaining four bonds until said amount is paid.

## "CONCLUSIONS OF LAW

"1. Donald R. Goddard is not liable as administrator c. t. a. to account to the Probate Court of Ford County, Kansas, for the proceeds from the sale of the real property in California.

"2. The American Bonding Company, surety on the bond of the administrator c. t. a., is not liable for the waste or misappropriation of the proceeds from the sale of the California property.

"3. The sum of $3404.14 is an equitable and proper charge against the estate of Elsie R. Goddard, deceased, for the support, maintenance and education of Timothy Goddard."